UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS CRUZ, | No. 2:16-cv-00498 TLN AC P |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| WILLIAM MUNIZ, | |
| Respondent. | |

Petitioner is a California state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The action proceeds on the petition filed on March 3, 2016.[1] ECF No. 1. Petitioner raised five grounds for relief in that petition. Id. On July 12, 2016, respondent moved to dismiss four of the five claims for failure to exhaust. ECF No. 11. Petitioner opposed the motion (ECF No. 14) and also moved to stay the case in order to exhaust his unexhausted claims (ECF No. 16). On February 23, 2017, the court issued findings and recommendations which recommended that petitioner's unexhausted claims be dismissed for failure to exhaust and that his motion for a stay be denied. ECF No. 19. Those recommendations were adopted by the district judge on March 21, 2017. ECF No. 20. Respondent was directed to file a response to the remaining, exhausted claim (id.) and he has done so (ECF No. 23).

---

[1] See Houston v. Lack, 487 U.S. 266 (1988) (establishing rule that a prisoner's court document is deemed filed on the date the prisoner delivered the document to prison officials for mailing).

1

Petitioner has not filed a traverse and the time for doing so has elapsed. Petitioner's sole exhausted claim is that his sentence violates the Eighth Amendment's prohibition on cruel and unusual punishment. ECF No. 1 at 5.

## BACKGROUND

I.     Proceedings In the Trial Court[2]

    A.     Prosecution Case

        1.     Events at Emerald Oak Drive

During the summer of 2010, Carina Gonzales ("Carina") was living in Galt with her brother Juan Gonzales ("Juan") and her boyfriend Edwyn Gallardo ("Gallardo"). One evening, Carina returned home to find her truck vandalized with broken windows and gang affiliated graffiti scrawled on the hood. She reported the incident to the police and noted that she had seen a red Toyota roaming the area.

On July 20, 2010, Carina was home with Juan, her son, and her eleven-year-old brother. Around 10 p.m. Gallardo arrived and, although the two were no longer dating, Carina asked him to come inside and he agreed to spend the night. Carina, Gallardo, and the younger children prepared to go to sleep. Juan remained outside the house talking to his girlfriend on the phone. Two or three hours later, Carina awoke to gunshots and heard Juan shouting "Don't come out!" and "I got shot!" She looked outside and saw what appeared to be a red car speeding away from her house.

Juan testified that, immediately prior to the shooting, he had been inside the house. He heard a loud noise and believed that someone might be trying to break a window. He ran outside and saw "like twelve" people with shirts obscuring their faces. Juan turned to run back into the house after seeing a gun being brandished. He heard five or six shots ring after him, but was not hit. The shooter followed Juan and fired through the door. Juan observed that the shooter had a tattoo on his midsection which read "VGT." Shortly after the incident, Juan would tell an investigating detective that he believed the shooter was an individual known as "Romp."

---

[2] This summary is based on the court's independent review of the trial record.

### 2. Events at Compadres Market

The day prior to the shooting, Gallardo was at Compadres Market buying food when friends called him outside due to a fight. The two friends were members of the Sureño Gang from Thornton. One of them appeared to have been stabbed. An assailant ran at Gallardo with a large piece of wood and Gallardo threw a soda at him. Gallardo later told a police detective that the man who had attacked him with a "two-by-four" was "Romp."

### 3. Events at McDonald's

On July 21, 2010, Ricardo Castillo ("Castillo") accompanied his girlfriend and two others to a flea market in Galt. After leaving, they stopped to get gas. Castillo, a member of the "West Side Modesto" Sureño Gang, began "throwing gang signs" to a group of people at the McDonald's restaurant across the street. He eventually began fighting with the other group of men. Castillo received six knife cuts. At trial he claimed not to remember anything about the fight and denied that gang terms were used prior to the fight.

Officers of the Galt Police Department responded to the scene of the fight and detained two individuals involved in the altercation – Anthony Kapewa and Diego Bayona. Later that day, police recovered a knife which appeared to match the slits in Castillo's shirt. No useable prints were recovered from the knife, however.

### 4. Witness Testimony Linking Petitioner to the Crimes

#### a. Jeremy Ruthrauff

Jeremy Ruthrauff testified that he knew petitioner by the street name "Romp." He also testified that petitioner had a "VGT" tattoo on his stomach and that the initials stood for "Varrio Ghost Town." On the night of the shooting, Ruthrauff was at his house watching television with a number of people, including petitioner. Someone noted that there was a rival gang member across town that wanted to start a fight. A group of people, including petitioner, left the house by car. Upon his return, petitioner told Ruthrauff that he had shot at a man standing outside his house and emptied his gun before escaping by car.

Ruthrauff was present the next day when the altercation at McDonald's occurred. He stated that a fight broke out after words were exchanged with individuals at the gas station across

the street. Ruthrauff testified that petitioner got hit during the altercation and pulled out a knife in order to stab the man who struck him.

b. Kyle Dennis

Another man – Kyle Dennis- also knew petitioner as "Romp" and considered him a friend. Dennis was present at Ruthrauff's house the night of the shooting and testified that, after the idea of attacking Sureños was raised, petitioner stated that he was going to fetch his gun. Dennis later observed petitioner tucking a revolver into his waistband.

Dennis was also present at the McDonald's the next day and observed petitioner run toward the altercation and make stabbing motions. Shortly thereafter he saw that one of the men had stab wounds.

c. Cassandra Azua-Miranda

Cassandra Azua-Miranda drove a red Toyota Tercel in 2010. In June of that year, her car was vandalized and she believed that "some southerners" were responsible. She believed that Juan Gonzalez and "Boxer" – which was a nickname for Edwyn Gallardo – were present at the time her car was vandalized. Azua-Miranda drove petitioner and some other men to Emerald Oak the night of the shooting. She subsequently heard gunshots and, when petitioner returned to the car, she noted that he appeared anxious.

B. Defense Case

At trial, petitioner's counsel argued that there was insufficient evidence to establish, beyond a reasonable doubt, that petitioner was responsible for the July 20 shooting or the knife attack on Ricardo. Trial counsel noted that Galt Police had failed to test the recovered knife to determine whether any blood on it was a match for Ricardo's blood. Trial counsel also argued that the prosecution witnesses had glaring inconsistencies in their testimony.

C. Outcome

The jury found petitioner guilty of shooting at an inhabited dwelling (Cal. Penal Code § 246) and also found true enhancements that: (1) at least one principal had used a firearm (Cal. Penal Code § 12022.53 (b), and (2) the offense was committed for the benefit of a gang (Cal.

////

Penal Code §186.22(b)(4).³  2 CT 401.⁴  The jury could not reach a verdict on the charge of the attempted murder of Juan Gonzalez and the court declared a mistrial as to that count.  1 CT 16.  The count was subsequently dismissed on the prosecution's motion.  1 CT 18.

With respect to the attack on Castillo, the jury found petitioner not guilty of attempted murder.  1 CT 16.  It also found petitioner not guilty of assault with by means of force likely to cause great bodily injury.  Id.  The jury did, however, find him guilty of the lesser included misdemeanor offense of assault (Cal. Penal Code §240).  Id.

Petitioner was sentenced to 15 years to life for shooting at an inhabited dwelling, plus an additional ten years for the § 12022.53 (b) firearm enhancement.  2 CT 401-402.

II.  Post-Conviction Proceedings

Petitioner timely appealed, and the court of appeal affirmed the judgment on March 10, 2015.  Lodg. Doc. 4.  The California Supreme Court denied review on June 10, 2015.  Lodged Doc. 6.  The instant federal petition, dated March 3, 2016, was docketed on March 10, 2016.  ECF No. 1.

## STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

³ The trial court orally imposed 15 years to life under Cal. Penal Code §186.22(b)(4).  The abstract of judgment reflected a stay of enhancement of §186.22(b)(1).  The court of appeal directed that the abstract be corrected to reflect the imposition of §186.22(b)(4) and the striking of §186.22(b)(1).  Lodg. Doc. 4 at 4-5.

⁴ "CT" refers to the Clerk's Transcript on Appeal.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. Harrington v. Richter, 562 U.S. 86, 99 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary. Id. at 784-785 (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 785.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether…the particular point in issue is clearly established by Supreme Court precedent." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. Id. In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 1399. Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008) (en banc). A different rule applies where the state court rejects claims summarily,

without a reasoned opinion. In Richter, supra, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. Richter, 562 U.S. at 101-102.

## DISCUSSION

### I. Petitioner's Allegations and Pertinent State Court Record

Petitioner argues that his sentence of 25 years to life amounts to cruel and unusual punishment. ECF No. 1 at 5. He states that: (1) no one was injured as a consequence of his shooting at an inhabited dwelling; (2) it is his first time being incarcerated; (3) he was not given any "second opportunity"; and (4) he was not given a "reasonable offer" before trial. Id. On direct review, petitioner also argued that such a lengthy sentence "imposed on someone barely 18 years of age at the time of the offense with a minimal prior record constituted cruel and unusual punishment." Lodg. Doc. 1 at 24.

### II. The Clearly Established Federal Law

The Eighth Amendment forbids the imposition of "cruel and unusual punishments." U.S. Const. amend. VIII. The Supreme Court has held that "[a] gross disproportionality principle is applicable to sentences for terms of years." Lockyer v. Andrade, 538 U.S. 63, 72 (2003). In Lockyer, the Supreme Court noted that the contours of the gross disproportionality principle "are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." Id. at 73.

Three other Supreme Court cases are instructive. In Rummel v. Estelle, the Supreme Court upheld a life sentence under a Texas three-strike statute and emphasized that "for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of the sentence actually imposed is purely a matter of legislative prerogative." 445 U.S. 263, 274 (1980). In Solem v. Helm, the Supreme Court held that a life sentence without possibility of parole for a seventh non-violent felony – here, uttering a no account check for $100 – was cruel and unusual. 463 U.S. 277, 283-284 (1983). Finally, in Harmelin v. Michigan, the Supreme Court rejected an Eighth Amendment

////

challenge where petitioner had been sentenced to a mandatory life sentence after being convicted of possessing 672 grams of cocaine. 501 U.S. 957 (1991).

With respect to juveniles, the Supreme Court has held that "a sentencing scheme that mandates life in prison without possibility of parole" violates the Eighth Amendment. Miller v. Alabama, 567 U.S. 460, 479 (2012). It has also held that the Eight Amendment prohibits imposition of a sentence of life without parole on a juvenile offender who did not commit homicide. Graham v. Florida, 560 U.S. 48 (2010).

III. The State Court's Ruling

This claim was raised on direct appeal. Because the California Supreme Court denied discretionary review, the opinion of the California Court of Appeal constitutes the last reasoned decision on the merits and is the subject of habeas review in this court. See Ylst v. Nunnemaker, 501 U.S. 797 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012). The state court denied this claim in a reasoned decision, as follows:

> At the time of the offenses, defendant was three months shy of being 19 years of age. Defendant contends his sentence on count two, shooting at an inhabited dwelling and the firearm use enhancement constitutes cruel and unusual punishment under *People v. Dillon* (1983) 34 Cal.3d 441 (*Dillon* ). The People respond that the issue is forfeited because at sentencing, defendant did not raise this fact-specific challenge to his sentence. Defendant acknowledges that his attorney did not raise a Dillon -based cruel or unusual punishment claim at sentencing but argues his claim should be considered on the merits "to forestall a *subsequent* claim of ineffective assistance of counsel." (Italics added.) He does not make an ineffective assistance of counsel claim on appeal.
>
> We conclude that defendant's claim of cruel and unusual punishment made for the first time on appeal is forfeited. (*People v. Burgener* (2003) 29 Cal.4th 833, 886 [defendant forfeits a federal constitutional argument by failing to object on such grounds in the trial court]; *People v. Norman* (2003) 109 Cal.App.4th 221, 229["[c]ruel and[/or] unusual punishment arguments, under the federal or California tests, require examination of the offense and the offender"]; *People v. DeJesus* (1995) 38 Cal.App.4th 1, 27 [*Dillon*-based challenge is "fact specific" and "must be raised in the trial court"; otherwise, it is forfeited]; *People v. Kelley* (1997) 52 Cal.App.4th 568, 583.)

Lodg. Doc. 4 at 3-4.

////

IV. Federal Court Review

Petitioner's claim should be denied for two reasons. First, as respondent correctly points out, this claim is procedurally barred by the state court's application of an adequate and independent state procedural rule. The Supreme Court has held that federal habeas review is precluded where a petitioner has defaulted his federal claim in state court pursuant to an adequate and independent state procedural rule. Coleman v. Thompson, 501 U.S. 722, 750 (1991). This rule is excepted if the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation, or that failure to consider the defaulted claim will result in a fundamental miscarriage of justice. Id. Here, the state court of appeal clearly and expressly relied on a procedural bar – the contemporaneous objection rule – to dispose of this claim. Lodg. Doc. 4 at 3-4. The Ninth Circuit has held that California's contemporaneous objection rule is an independent and adequate procedural state procedural rule which bars federal court consideration of a claim. See Tong Xiong v. Felker, 681 F.3d 1067, 1075 (9th Cir. 2012). And petitioner has not demonstrated either cause for the default or that failure to consider this claim on its merits will result in a fundamental miscarriage of justice.

Moreover, petitioner would not be entitled to relief even if this court were to reject the procedural bar and consider this claim de novo. The Supreme Court has upheld more severe sentences for crimes less serious than petitioner's. In Rummel, 445 U.S. 263 at 264-266, the Supreme Court upheld a life sentence under a state three-strikes law for fraudulent use of a credit card, passing of a forged check, and obtaining $120.75 under false pretenses. In Harmelin, 501 U.S. 957 at 1009, the Supreme Court determined that possession of cocaine was sufficient to support a life sentence. Although petitioner's sentence is long, it is not grossly disproportionate to his offense, which was both violent and gang-related.

Finally, the fact that petitioner was three months shy of his nineteenth birthday at the time he committed the crime of conviction does not affect the Eighth Amendment analysis dictated by the Supreme Court. Although petitioner was young, he was not legally a juvenile. Cf. Miller, 567 U.S. at 479.

////

Petitioner makes legitimate arguments in support of a lesser sentence – arguments that the sentencing court rejected, and which do not render the sentence unconstitutional. The Supreme Court has cautioned that "federal courts should be [reluctant] to review legislatively mandated terms of imprisonment and successful challenges to the proportionality of particular sentences should be exceedingly rare . . ." Hutto v. Davis, 454 U.S. 370, 374 (1982) (internal quotation marks and citations omitted). This is not one of those exceedingly rare cases.

## CONCLUSION

For all the reasons explained above, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. See 28 U.S.C. § 2253(c)(2). Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 28, 2017.

_allison Claire_
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE